UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATON GRAS,

        *Plaintiff*

    v.

SUBCONTRACTING CONCEPTS, LLC,
PETER FIDOPIASTIS, and RYAN WISE,

        *Defendants,*

CASE NO. 2:19-cv-00643-BJR

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## I.   INTRODUCTION

Plaintiff Seaton Gras initiated the instant action alleging that Defendant Subcontracting Concepts, LLC ("SCI"), and its President, Peter Fidopiastis, and Vice President of Technology, Ryan Wise, (collectively "Defendants") intentionally intercepted a telephone call between Plaintiff and a third-party in violation of the Washington's Privacy Act, WASH. REV. CODE § 9.73.030, leading to the souring of business relations between Plaintiff and Defendants. Before the Court is Defendants' motion to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim. Dkt. No. 6. Having reviewed the motion, opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion on the basis of lack of personal jurisdiction over Defendants. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Plaintiff is a software developer and entrepreneur who lives and works in the State of

1

Washington. Dkt. No. 1-1 at ¶ 2. SCI, in turn, is a limited liability company organized under Delaware law that is headquartered and primarily conducts business in New York. *Id.* at ¶ 3; Dkt. No. 6 at 2. SCI is a self-described "third-party administrator for logistic companies and independent owner operators" whose primary business is facilitating payment processing and compliance primarily for the courier industry. Dkt. No. 6 at 2; *see also* Dkt. No. 1-1 at ¶ 3. Defendants Fidopiastis and Wise are officers of SCI. *See* Dkt. No. 1-1 at ¶¶ 4–5.

On October 15, 2013, Plaintiff and Defendants entered into a contract ("the Contract") for Plaintiff to develop a bidding software application ("the App") for Defendants to market to their clients. Dkt. No. 1-1 at ¶ 10; Dkt. No. 6 at 2. As Plaintiff describes, the App "would allow trucking companies to post courier delivery routes to independent contractor drivers" for which drivers would be able to bid. Dkt. No. 1-1 at ¶ 11. The App would then place bids in reverse order, allowing the bidder with the lowest price to secure the contract for deliver. "The main purpose of [the App]," as Plaintiff explains, "is to ensure drivers utilized by businesses like SCI or SCI's clients would be classified by government regulators as bonafide independent contractors, rather than employees, through the app's reverse-auction bidding system." *Id.* at ¶ 12.

There is some disagreement between the parties as to the exact extent to which relevant events in the development of the relationship and the concluding of the Contract occurred in the State of Washington. Defendants, for example, assert that all of the negotiations surrounding the App took place in New York, including the signing of the Contract. Dkt. No. 6 at 2. Plaintiff, however, asserts that the relationship goes back further, including introductions through a mutual contact from Washington, as well as the fact that he developed software for the App while in Washington and "navigate[d] technical details with defendant via email in Seattle." Dkt. No. 15

at 2–3.  Either way, the parties seemed to have differing understandings as to whether software for the App was meant to be exclusive, with Plaintiff thinking he was free to market the product to third-parties, *see* Dkt. No. 1-1 at ¶ 15–18, while Defendants thought he was not, Dkt. No. 6 at 2.

The real heart of this case, however, is a phone call that occurred on March 25, 2014 in which Plaintiff marketed the App to several of Defendants' competitors while using Defendants' conference call line.  *See* Dkt. No. 1-1 at ¶ 21; Dkt. No. 6 at 3.  According to Plaintiff, Defendants "surreptitiously and illegally" recorded this call without his permission and, upon learning of Plaintiff's intent to market the App to competitors, Defendants decided to "sabotage their contract with [Plaintiff], block [Plaintiff]'s ability to build any other business partnerships, and unilaterally gain control of the [A]pp."  Dkt. No. 1-1 at ¶ 23.

Again, locations matter.  While he failed to state as much in his complaint, Plaintiff asserts that he initiated the call while in Washington State.  *See* Dkt. No. 15 at 6, 7; Dkt. No. 17 at ¶ 5.  Defendants, however, assert that "Plaintiff's phone call was initiated on SCI's internal conference call telephone number and equipment, which is solely located [] at SCI's New York office."  Dkt. No. 6 at 3.  Defendants add that Plaintiff neither had permission to use their conference call line, nor would permission have been granted if requested.  *Id.* at 3–4.

As a result of actions taken by Defendant in response to learning of his intent to market the App, Plaintiff claims he was "unable to monetize or raise investment funds for [the App]." He subsequently filed the instant action in King County Superior Court claiming two causes of action: (1) Unlawful Wiretap in violation of the RCW 9.73.030 and (2) the common law tort of Invasion of Privacy.  Dkt. No. 1.

After removal to this Court, *see* Dkt. No. 1, Defendants moved to dismiss for lack of

3

personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6), respectively. Dkt. No. 6.[1] Plaintiff opposes dismissal. Dkt. No. 15.[2]

### III.    LEGAL STANDARD

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).[3] As Washington State's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 79 (Wash. 1989), the Court's "inquiry centers on whether exercising jurisdiction comports with due process," *Picot*, 780 F.3d at 1211. Due process, in turn, "requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting

---

[1] Plaintiff points out that Defendants' motion to dismiss violates the Court's standing order as it fails to contain a certificate that the parties have met and conferred in an attempt to resolve any disputes. Dkt. No. 15 at 5–6. The Court requires that motions to dismiss under Federal Rule of Civil Procedure 12(b) contain a certificate of conferral in the hopes that the parties might cure any defects by filing an amended complaint. Dkt. No. 11 at 3 (Section II.F). In the interest of expediting resolution of this matter, and because the Court is in a position to rule on the motion, the Court chooses not to enforce its order by striking the motion, as requested by Plaintiff.

[2] Defendants have failed to provide a reply in support of their motion to dismiss. Reply briefs, however, are not mandatory. *See* Local Rules W.D. Wash. LCvR 7(b)(3) ("The moving party *may* . . . file . . . a reply brief in support of the motion") (emphasis added); *see also Snohomish Cty. Pub. Hosp. Dist. No. 1 v. Hartford Fire Ins. Co.*, No. 17-1456, 2018 WL 2216122, at *8 (W.D. Wash. May 15, 2018) (LCvR 7(b)(3) "expressly contemplate[s] that the moving party may elect not to file a reply brief and that the court would then decide a motion without the benefit of that filing"). The Court finds it is capable of ruling on the present motion without the benefit of a reply brief.

[3] "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *In re Cty. of Orange*, 784 F.3d 520, 523 (9th Cir. 2015); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901, at *5 (W.D. Wash. May 27, 2014); see Dkt. No. 6 at 5–6 (applying state procedural precedent in legal standard section); Dkt. No. 15 at 4–5 (same).

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see also Mavrix Photo, Inc. v. Brand Techs.*, *Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Plaintiff bears the burden of establishing that personal jurisdiction in proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Under the current procedural posture, Plaintiff need only make a prima facie showing of the jurisdictional facts. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss").

Generally, "depending on the strength of those contacts," there are two forms of personal jurisdiction: general and specific. *Picot*, 780 F.3d at 1211. Neither party in this case, however, claims general jurisdiction, so the Court will focus its analysis on specific jurisdiction. The Ninth Circuit employs a three-part test to assess whether a party has sufficient contacts to subject them to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Picot*, 780 F.3d at 1211.

But, "[t]he exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot*, 780 F.3d at 1212. Specifically, there is a distinction between when an action sounds

5

in contract versus tort. "For claims sounding in contract," the Ninth Circuit applies the "purposeful availment" test and "ask[s] whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). By contrast, "[f]or claims sounding in tort," the Ninth Circuit applies the "purposeful direction" test and "looks to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802–03); *see also Mavrix Photo*, 647 at 1228. While the parties in this case have formed a contract, Plaintiff's causes of action both sound exclusively in tort (Wiretapping and Invasion of Privacy). Thus, "purposeful direction" is the appropriate test. *See Mavrix Photo*, 647 at 1228 (internal quotations and citations removed) ("Because [Plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework.").

The Ninth Circuit applies the three-part *Calder* test, derived from *Calder v. Jones*, 465 U.S. 783 (1984), to determine "purposeful direction." See *Picot*, 780 F.3d at 1214; *Schwarzenegger*, 374 F.3d at 803. Under the *Calder* test, a defendant purposefully directs their actions towards the forum in question where he or she "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).[4]

---

[4] As the Court finds that it does not have personal jurisdiction over Defendants, it need not proceed to Defendants' arguments regarding venue and failure to state a claim.

## IV. DISCUSSION

As stated previously, the heart of this case is a phone call placed by Plaintiff while in Washington to a teleconference line housed in New York and operated by a New York company.

Plaintiff claims the Court has personal jurisdiction over Defendants based on the course of conduct leading up to the signing of the parties' agreement as well as post-dispute effects and litigation that appears to have occurred, and been resolved, in Washington State, although the parties do not provide detail on the case. *See* Dkt. No. 15 at 6–11.

Defendants contend that the Court does not have personal jurisdiction because they "did not transact business within Washington State and did not commit a tort within Washington State." Dkt. No. 6 at 6. Specifically, "all the facts surrounding The Contract," claim Defendants "have nothing to do with Washington State" as negotiations, signature, and execution of the Contract occurred in New York. *Id.* Further, Defendants argue that the alleged tort occurred outside of Washington State because all of the teleconference and recording equipment used to record the call are located in their New York office. *See id.* at 10.

This is a unique case, and the Court is hard-pressed to find its kin. What the parties fail to appreciate is that the course of negotiations regarding the contract are of no moment. Plaintiff has only alleged statutory and common law tort claims. In this case, there is no allegation of breach of contract. As such, the course of creating the contract becomes less important than the facts specifically surrounding the offending phone call and the Court applies the *Calder* "purposeful direction" test. It need not, however, proceed beyond the first prong of the test.

"The meaning of the term 'intentional act' in [Ninth Circuit] jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the

'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). Here, Plaintiff's complaint fails to allege that Defendants took a specific action to direct their conduct towards the State of Washington. Plaintiff, in fact, admits as much by stating that "[t]he conference line was already tapped before Mr. Gras called in." Dkt. No. 15 at 7. One can certainly question the technical and legal proposition that one is capable of wiretapping one's own conference line, but that hypothetical is beyond the realm of the current issue. The relevant facts that remain are that Plaintiff initiated the contact with the State of New York by dialing into the teleconferencing equipment of a New York based company, whose equipment is located in New York, and who did not appear to have knowledge of the call prior to, or during, its commission or give permission for such a call to take place.

Further, it appears from Defendants' briefing that their equipment does no more than automatically record every conference call, meaning that the company and its officers took no affirmative action directed to the State of Washington. *See* Dkt. No. 7 at ¶ 28 (emphasis added) (declaration of Defendant Fidopiastis stating that "SCI's *recording software*, *which recorded* the Plaintiff's telephone call, is located in SCI's New York office"). Plaintiff has made clear that no member of SCI was on the conference line during the call to initiate the recording and that the recording equipment executed the recording as it would have when any authorized user initiated a call. *See* Dkt. No. 17 at ¶ 5 (emphasis added) (Declaration of Mr. Gras stating that "Defendants illegally recorded one such call where *Mr. Carlson and I* were marketing the bidding app *to other clients* without our consent"). In essence, the Court is left with a unique situation in which Plaintiff effectively called into an answering machine in a foreign state and, upon learning of the recording, attempted to haul Defendants into the state from which he called. This does not constitute

purposeful direction.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants motion to dismiss for lack of personal jurisdiction without prejudice.

DATED this 17th day of September, 2019.

*Barbara J. Rothstein*
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE